Case 18-10804-TPA    Doc 84    Filed 09/21/20    Entered 09/21/20 15:32:20    Desc Main
Document    Page 1 of 14

FILED
9/21/20 3:06 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| DEBRA A. ALEXANDER, *Debtor* | : : : | Case No. 18-10804-TPA |
| | : | Chapter 13 |
| DEBRA A. ALEXANDER, *Movant* | : : : | Related to Doc. No. 64 |
| v. | : : | |
| RONDA WINNECOUR, CHAPTER 13 TRUSTEE, LSF8 MASTER PARTICIPATION TRUST, CAPITAL ONE BANK, *Respondents* | : : : : : | |

**MEMORANDUM ORDER**

The question presented to the Court in this matter is whether a Debtor's attorney may "farm out" the obligation to serve a document to a paid "notice provider" without the knowledge or approval of the Court when the Court issues an order directing "the Debtor" to serve the document. For the reasons explained below, the Court concludes that prior Court approval is required before such a service obligation may be carried out in this manner.

This Chapter 13 case was filed on August 10, 2018, with the Debtor being represented by Attorney John Nagurney. A plan was confirmed on an interim basis on December 12, 2018, and a final confirmation order was entered on April 10, 2019. On January 10, 2020, the Chapter 13 Trustee filed a *Trustee's Certificate of Default Requesting Dismissal of Case* alleging that plan payments were in significant arrears and asking that the case be dismissed without prejudice. *See*, Doc. No. 47. The Court responded on January 14, 2020, by issuing its standard

1

order for this type of circumstance, directing the Debtor to either explain/refute the Trustee's allegations, or propose an amended plan to address the alleged default. *See*, Doc. No. 48. That January 14th Order also included the following:

> **IT IS FURTHER ORDERED** that, if the Debtor(s) elects to file an Amended Plan, the Debtor(s) must immediately serve a copy of the *Notice of Proposed Modification to Confirmed Plan*, the *Amended Plan*, and the *Documentary Proof of Payment* on the Chapter 13 Trustee and all parties on the mailing matrix and file a *Certificate of Service* with the Clerk.

(emphasis in original).

The Debtor did elect to file an Amended Plan. On March 3, 2020, Attorney Nagurney filed a Certificate of Service ("Certificate") at Doc. No. 58 showing the service that had been made. Page 1 of the *Certificate* was electronically signed by Attorney Nagurney. It set forth a list of documents including an Amended Plan, stated that they had been served by first-class mail on the parties identified on the mailing matrix that was attached as an exhibit, and then stated:

> I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

*Certificate* at p. 1. Page 2 of the *Certificate* included the same list of documents as Page 1, repeated that those documents had been deposited into the mail and thereby served on the parties listed on the mailing matrix, and concluded with the following signature:



Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
John E. Nagurney, Esq.
John E. Nagurney, Esq.
12063 Midway Drive
Conneaut Lake, PA  16316

The Court thereafter issued an Order to Show Cause ("OTSC") on March 17, 2020 at Doc. No. 64 directed against Attorney Nagurney and Jay Jump of certificateofservice.com.[1] The Court was concerned enough about the activity involving Mr. Jump and certificateofservice.com to include it within the *OTSC* because it was not previously aware of their existence or that they were providing services for an attorney in this Court without any prior approval.  Additionally, the signature of Mr. Jump on the *Certificate*, a legal document filed in the case, raised the question of whether he was engaged in the unauthorized practice of law because he did not appear to be an attorney licensed to practice in Pennsylvania.  In that regard, after setting forth the pertinent facts concerning the *Certificate*, the *OTSC* stated:

> Furthermore, it is troublesome to the Court that "Jay Jump" of "certificateofservice.com" is preparing and affixing his signature to legal documents when he has not been admitted to practice before this Court or, as far as this Court is aware, before any courts in Pennsylvania.

*OTSC* at p. 3.

---

[1]   The matters set forth in the *OTSC* concerning Attorney Nagurney have since been resolved and are no longer at issue, so nothing further regarding them need be addressed here.

Mr. Jump was directed to personally appear before the Court for the *OTSC* hearing, but that was subsequently changed to a "Zoom" hearing format due to the ongoing medical/pandemic emergency. Prior to that, on April 9, 2020, Mr. Jump, acting through Counsel, had filed a ***Motion to Excuse Personal Appearance of Jay S. Jump Per Order to Show Cause Dated March 17, 2020*** ("Motion"), at Doc. No. 68. The *Motion* was denied as moot on April 13, 2020 at Doc. No. 69, but it does contain some factual assertions that are relevant for present purposes:

- Mr. Jump is the President and CEO of BK Attorney Services, LLC d/b/a certificateofservice.com (hereinafter "BK") of Pasco, Washington. (*Motion* at ¶1).

- BK has been an approved third-party notice provider as recognized by the United States Courts since 2008. (*Motion* at ¶2).

- BK mails bankruptcy notices and documents for over 3,800 law firms, panel trustees, and Chapter 13 Trustees across the U.S. Among BK's customers are two members of the Chapter 7 panel of trustees for the Western District of Pennsylvania, those being Attorneys Cardiello and Sikirica. (*Id.*).

- BK was hired by Attorney Nagurney in this case. It made the service as required in the January 14th Order, and it provided Attorney Nagurney with a "report of service" which he then filed as part of the March 3, 2020 *Certificate*. (*Motion* at ¶¶3,4).

- Mr. Jump is himself a bankruptcy attorney with 20 years of experience and is licensed in the state of Washington. (*Motion* at ¶9).

Upon reviewing the *Motion* the Court was quite surprised to learn that Mr. Jump and BK had for some time apparently been providing this same sort of notice service in other bankruptcy cases in this District as well -- those involving Trustees Cardiello and Sikirica. Informal inquiries with the other members of the Court and with the Office of the United States Trustee revealed that they likewise were unaware that Mr. Jump or BK have been actively

4

operating in the Western District.

Ultimately, the *OTSC* Zoom hearing took place on June 4, 2020. The Court began the hearing by stating that in its view, under *Fed.R.Bankr.P 2002,* Court approval was required before a third-party notice provider like BK could serve papers in a matter in this District, and that mere status as an "Approved Bankruptcy Notice Provider" by the Administrative Office of the United States Courts ("AO"), standing alone, was not sufficient.[2] The Court noted that neither Mr. Jump nor BK have ever been approved by it to so act.

The initial response, through Counsel, was that BK had been acting as an employee of Mr. Nagurney in making the service. However, upon questioning by the Court it was conceded that no W-2 was ever issued to BK, and it is obvious that BK was acting as a contractor for a fee, not as an employee. The next response was to extol the virtues of the services provided by BK, especially to solo practitioners and small law firms that are not equipped to handle large mailing projects such as those that can be required in a bankruptcy case. Mr. Jump stated that it was his personal experience as a practicing bankruptcy attorney facing just such difficulties that prompted him to search for someone who could handle service requirements for him. After finding no such service available, he started BK in 2005 and it has been quite successful. He explained the work of the business as follows:

> ... Debtor attorneys, simply go to our website, upload the documents they want to serve, enter their case information, they tell us whether they want us to grab ecf master mailing matrix or they want us to send to their own ... supply address list. We simply print the documents, stuff them into envelopes, mail them all out and supply a certificate of service to the debtor's attorney. We have been doing that for 15 years. We charge 15 cents per page times the number of

---

[2]    A list of such "Approved Bankruptcy Notice Providers" can be found at https://www.uscourts.gov/services-forms/bankruptcy/approved-bankruptcy-notice-providers and BK does appear on it.

5

Document    Page 6 of 14

> pages in a document set, times the number of creditors or parties that we have to mail it to. We provide certified mailing services, overnight mailing services, first class mailing services.

*See Transcript of Proceeding* dated June 4, 2020, at p. 17, l. 17 through p. 18, l. 3, Document No. 82. Mr. Jump stated that BK provides this service in courts around the country and that other courts actually prefer service being done by BK because it is reliable and the exact time of service can be proven if ever called into question in a particular case.

At the close of the *OTSC* hearing the Court indicated that it would take the Jump/BK matter under advisement. After giving the matter additional thought in the following weeks, the Court came to the view that an approach intended to reach a practical solution would be the best course to take, if possible. This flowed from a couple of premises.

First, the Court was persuaded by the presentation made at the *OTSC* hearing that the services provided by BK can be helpful to some bankruptcy practitioners and it 666should be an available option, as long as done appropriately. Second, in response to the Court's observation at the hearing that BK could be appointed as a notice provider in any particular case by simply filing a motion and obtaining Court approval, Mr. Jump objected that such a procedure would be an "inefficiency" that would discourage the use of BK's services. *See Transcript of Proceeding* dated June 4, 2020 at p. 24 l. 24 through p. 25 l. 2. The Court was not persuaded by that conclusion because bankruptcy practice, by its very nature, often requires the filing of recurring routine, non-controversial types of motions for various reasons. The addition of one more such form motion to the roster would hardly seem unduly burdensome. Nevertheless, in a spirit of accommodation, the Court decided to give BK's concern the benefit of any doubt and to look to see whether there might be a more "efficient" way to proceed.

The practical solution seemed to be to permit BK to file a single motion seeking blanket recognition by this Court as a notice provider, so that if granted BK could thereafter provide services in any case without the need to seek approval separately in each individual case.[3] This sort of "omnibus" motion could be easily accomplished through the procedural vehicle of a "Miscellaneous Proceeding," which is invoked in this Court for a number of purposes, including when an order will affect numerous cases and it is more efficient to enter a single order in a Miscellaneous Proceeding rather than have to do so in each individual case. For instance, a Miscellaneous Proceeding is often used when attorneys want to make a mass substitution of counsel in a large number of cases. *See, e.g.*, Misc. No. 20-00212-CMB, entitled "All Cases in which Jodi L. Hause is Attorney of Record, for Phelan Hallinan Diamond & Jones, LLP." The process is simple and efficient.

This potential solution seemed promising as well because comments made by Mr. Jump at the June 4th *OTSC* hearing led the Court to believe that he and BK would welcome the opportunity to resolve the matter in this fashion.[4] The Court therefore directed a member of its staff to informally contact the attorney who is representing Mr. Jump and BK and suggest that if BK were to file such a motion the Court would consider it and the *OTSC* might thereby be resolved. The initial response to this outreach seemed favorable, and the Court therefore deferred any further

---

[3] That "solution" would not have applied in one of the relatively rare complex Chapter 11 cases filed in this District in which a claim/noticing agent is approved by the Court pursuant to *28 U.S.C. §156(c),* though it is unclear whether BK even provides services in such cases.

[4] *See Transcript of Proceeding* dated June 4, 2020, p. 12, l. 7-8 ("Well okay, the simple solution's then for you to issue a blanket order saying--"); p. 20, l. 12-13 ("...I would be happy to seek your approval and provide you with anything you want..."); p. 24, l. 19-22 ("...but I would bend over backwards to show you how valid and effective this methodology of service is. And I will be happy to do anything you want, so I can get your approval to serve in the Western District of Pennsylvania.").

action on the *OTSC* in anticipation of a motion being filed by BK. Approximately two weeks later, however, BK's attorney contacted the Court's staff and indicated that Mr. Jump and BK had decided they were unwilling to file such a motion. As a result, the Court has no alternative but to proceed with a consideration of the *OTSC*.

The *OTSC* can be decided based on the present record, without the need for a further evidentiary hearing, because there are no material facts in dispute and the sole issue in dispute is a legal one. Analysis of the legal issue presented here begins with the well-established principle that:

> Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose ... submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991).

The January 14, 2020 Order entered in this case directed that service of any amended plan and related documents was to be made by the Debtor. The Court entered the January 14th Order pursuant to *Fed.R.Bankr.P. 2002(a)(9)* and *2002(b)(3)*. Both of those provisions state that notice is to be made by "the clerk, or some other person as the court may direct." This recognition of the Court's power has been a part of *Rule 2002* since its inception. The 1983 Advisory Committee Note to Rule 2002 states:

> Some of the notices required by this rule may be given either by the clerk ***or as the court may otherwise direct***. For example, the court may order the trustee or debtor in possession to transmit one or more of the notices required by this rule...

Advisory Committee Note (1983) (emphasis added).

The Court therefore finds that it had the authority to issue the January 14th Order, and others like it that are routinely issued in virtually every case, directing the debtor or someone else other than the Clerk to make service. Such orders are thus the "lawful mandate" of the Court, and under *Chambers* the Court has the inherent power to enforce them. Furthermore, the Court has the power to interpret its own orders. *See, e.g., In re Brownsville Property Corp., Inc.*, 469 B.R. 216, 223 (Bankr. W.D. Pa. 2012) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)).

When the January 14th Order directed "the Debtor(s)" to serve documents, the Court interprets that as meaning either that the Debtor herself was to make service, or that the service could be done by the Debtor's attorney or an employee in his office. Other similar orders entered in this or other cases would be interpreted the same way. That is to say, when such order directs a particular party to make service it is to be done either by the party itself or, if the party is represented, by the party's attorney or an employee in the attorney's office. The Court finds this to be a reasonable interpretation based on the well-established principle that an attorney is the agent of his or her client when acting or failing to act in furtherance of litigation. *Vermont v. Brillon*, 556 U.S. 81, 91 (2009). The Court's interpretation does not authorize an attorney to contract with a third-party entity, such as BK, to carry out the service obligation imposed by the order.

Mr. Jump and BK made several arguments as to why the Court should interpret the January 14th Order so as to allow service to be made by BK, but none of them are persuasive. One such argument was to compare BK with the Bankruptcy Noticing Center ("BNC") and ask why, if the BNC is permitted to make service of documents in this Court on behalf of the Clerk, BK should not similarly be allowed to make service on behalf of attorneys. Mr. Jump stated as follows at the *OTSC* hearing:

> You use the bankruptcy noticing center, which, if you'll look at the docket for the case, you will see that these orders, the very same order that you issued for my show cause hearing was served by the bankruptcy noticing center. And, I'm going to suggest to you that you didn't grant them specific authority to serve in this case. And I'm going to suggest that probably the Western District of Pennsylvania didn't issue an order ...

*See Transcript of Proceeding* June 4, 2020, p. 12, l. 24 through p. 13, l. 6.

Mr. Jump's attempt to equate BK and BNC is flawed. While BK is a purely private entity, BNC was created in 1994 by the AO and it is run by a contractor hired by the AO. Bankruptcy courts are encouraged, though not mandated, to use BNC for the service of documents which are their responsibility to serve.[5] Furthermore, contrary to Mr. Jump's speculation, the Western District has issued an order directing the Clerk to use the services of the BNC. *See, Administrative Order #2005-3* (October 13, 2005), a copy of which is appended as Attachment

---

[5]   **§ 415 Bankruptcy Noticing Center (BNC)**

(a)   For notices that have not been delegated to other persons, the AO established the BNC, which is operated by a contractor. The BNC provides notice production and distribution services to the bankruptcy courts.

    (1)   All bankruptcy courts and the Districts of Guam and the Virgin Islands voluntarily use the BNC.
    (2)   The District of the Northern Mariana Islands does not use the BNC even though the U.S. District Court in that district accepts and processes bankruptcy case filings.

(b)   The BNC:

    (1)   provides efficiency through centralization of the noticing function;
    (2)   improves quality of notices produced through use of state-of-the-art production, printing, and mailing technologies;
    (3)   administers electronic noticing to subscriber notice recipients; and
    (4)   yields substantial cost saving compared to traditional noticing methods.

"A."

Mr. Jump and BK have also argued, or at least implied, that the mere fact that BK has been recognized as an Approved Provider by the AO should mean that BK can act as a notice provider without the Court's approval. There is no basis for such a conclusion. The AO's Approved Provider "program" is based on *Fed.R.Bankr.P. 2002(g)(4)* and *9001(9)*, which do indeed, in tandem, contemplate that the AO will approve notice providers who can act in bankruptcy cases. However, nothing in those *Rules* even suggests that the designation of a notice provider as an "Approved Provider" by the AO thereby diminishes the Court's authority found elsewhere in *Rule 2002* to direct how service is to be made, or allows Approved Providers to act in a case without the approval of the Court. In fact, quite to the contrary, *Rule 2002(g)(4)* states in pertinent part:

> ... an entity and a notice provider may agree that ***when the notice provider is directed by the court to give a notice***, the notice provider shall give the notice to the entity in the manner agreed to ...

*Fed.R.Bankr.P. 2002(g)(4)* (emphasis added). Thus, even an Approved Provider can only act if the court permits it to act.

Mr. Jump also stated at the *OTSC* hearing that he was "flabbergasted" that the actions of BK were being called into question. He noted that BK is operating in 94 judicial districts across the country and implied that this is the first time its ability to act has been challenged. The Court has no way of knowing whether that statement is true, but even assuming it is, that does not change the Court's view. These other courts may not be concerned if a third-party entity is serving notices without their knowledge or approval or may be willing to forego exercising their authority

under *Rule 2002* to direct how service is to be made. This Court is concerned about how service is being made in this District and it is not willing to abdicate its authority in that regard.

A final argument that was made may be termed one of pure expediency. That is to say, the Court was urged to allow BK to continue operating in the same fashion it has been because it provides a worthwhile, reliable service that saves attorneys time and money. Again, however, even if that assessment is true – and, as indicated above, the Court tends to agree it is – that is not an adequate reason to disregard what the *Rules* and this Court's orders provide with respect to how service is to be accomplished especially when practical, common sense avenues exist for doing so.

The Court concludes that when BK provided service in this case it did so without the approval of the Court, and in violation of the January 14th Order. Despite that, the Court will not sanction BK or Mr. Jump for this violation because they may have reasonably believed they were authorized to act based on their prior experience in other judicial districts, and the fact that they have acted undetected in this District until now. However, since the Court has now explicitly stated the intent and understanding behind the January 14th Order entered in this case, and the similar orders entered in other bankruptcy cases, Mr. Jump and BK are on notice that in the future they must obtain the approval of the Court to provide services to attorneys unless the order in question specifically authorizes the party's attorney to utilize the services of a notice provider. The Court reserves the right to impose sanctions for any future violations by Mr. Jump or BK in this regard.

*AND NOW*, this *21st* day of *September, 2020*, for the reasons stated above and after raising the matter before the Board of Judges of this Court for consideration and receiving no

Case 18-10804-TPA    Doc 84    Filed 09/21/20    Entered 09/21/20 15:32:20    Desc Main
Document    Page 13 of 14

objection to entry of this Order, it is hereby **ORDERED, ADJUDGED** and **DECREED** that,

(1) The *OTSC* is **VACATED.**

(2) On a going forward basis, BK and Mr. Jump are prohibited from providing notice services for attorneys or trustees in the Bankruptcy Court for the Western District of Pennsylvania unless (a) the order requiring the notice specifically provides that it may be accomplished through its services as a notice provider, (b) a motion is filed and granted in the specific case authorizing the use of BK as notice provider in the case, or (c) an appropriate motion seeking blanket recognition for BK to act as a notice provider in any case filed in this District (except for a complex Chapter 11 case) has been filed and such motion is granted.

_____ vas
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case Administrator to serve:
    Hon. Carlota M. Böhm, Chief Judge
    Hon. Jeffery A. Deller
    Hon. Gregory L. Taddonio
    Mark Claypool, Esq.
    Owen Katz, Esq.
    John Nagurney, Esq.
    Office of the United States Trustee
    Natalie Lutz Cardiello, Esq.
    Jeffrey J. Sikirica, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| In Re: | ) | |
|---|---|---|
| | ) | **Administrative Order Governing** |
| **ADMINISTRATIVE ORDER** | ) | **Notice Requirements** |
| **#2005-3** | ) | **of 11 U.S.C § 342(f)(1)** |
| | ) | |

ORDER

WHEREAS, 11 U.S.C § 342(f)(1) provides that an entity may file with any bankruptcy court a notice of address to be used by all the bankruptcy courts or by particular bankruptcy courts to provide notice to such entity in all cases under chapters 7 and 13 in which such entity is a creditor pending in the courts with respect to which such notice is filed; and

WHEREAS, the Administrative Office of the United States Courts has entered into an agreement with the Bankruptcy Noticing Center to maintain a national registry of entities requesting notice at a specific address under 11 U.S.C § 342(f)(1); and

WHEREAS, the Bankruptcy Noticing Center has also agreed to review the mailing matrixes submitted by the Clerk and substitute an entity's preferred address specified in accordance with 11 U.S.C § 342(f)(1) prior to mailing notices sent by the court.

AND NOW, this 13th day of October, 2005, it is hereby ordered, effective October 17, 2005, the Clerk shall use the services of the Bankruptcy Noticing Center to mail notices to all parties in interest. If the Clerk determines that the Bankruptcy Noticing Center should not mail a specific notice, the Clerk shall compare the mailing matrix that he maintains with the national registry of entities requesting notice at a specific address under 11 U.S.C § 342(f)(1) prior to mailing a notice to all interested parties in a case.

/s/
M. Bruce McCullough, Chief Judge

/s/
Judith K. Fitzgerald, Bankruptcy Judge

/s/
Thomas P. Agresti, Bankruptcy Judge

/s/
Jeffery A. Deller, Bankruptcy Judge

/s/
Warren W. Bentz, Bankruptcy Judge

/s/
Bernard Markovitz, Bankruptcy Judge

**ATTACHMENT "A"**